UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

v.                                          CRIMINAL NO. 4:19-cr-84

OBINWANNE OKEKE,

          Defendant.

## OPINION

This matter comes before the court on Defendant's pro se "Motion to Strike or Vacate Restitution Order Pursuant to United States v. Elbaz." ECF No. 108 ("Motion"). For the reasons stated below, the court **DENIES** Defendant's Motion.

## I. BACKGROUND

On June 18, 2020, Defendant Obinwanne Okeke pleaded guilty to Count One of an Indictment, which charged him with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 1349 and 1343. ECF Nos. 16 (Indictment), 35 ("Plea Agreement"). The conspiracy lasted from about 2015 to at least 2019, in which Defendant and other co-conspirators engaged in computer-based schemes, such as sending phishing emails to businesses to obtain login credentials of the businesses' employees. ECF No. 36 ¶¶ 1-3 (Statement of Facts). In or about 2018, the conspiracy targeted Unatrac Holdings, LLC ("Unatrac"), a company headquartered in the United Arab Emirates ("UAE"). Id. ¶ 8. Unatrac's United Kingdom offices were

victimized through an email scheme, resulting in fraudulent wire transfers totaling almost eleven million dollars ($11,000,000). Id. The conspiracy also victimized domestic individuals and businesses located within the Eastern District of Virginia and outside of Virginia. Id. ¶ 7. The computer-based schemes at the root of this fraud were conducted primarily from Nigeria. Id. ¶ 10.

Based on the above conduct, on February 16, 2021, the court sentenced Defendant to one hundred twenty (120) months imprisonment, followed by three (3) years of supervised release. See ECF Nos. 54 (Sentencing Hearing), 57 at 2-3 ("Judgment"). The court ordered Defendant to pay restitution in the amount of $10,679,166.54, jointly and severally with any other defendants, to Unatrac and two of its insurers[1] (the "Restitution Order"). ECF No. 57 at 7-9. That same day, the court entered a Consent Order of Forfeiture, detailing specific property and other assets of Defendant to be forfeited to the United States. Id. at 10-13.[2] On

---

[1] Unatrac's two insurers are Orient Insurance PJSC, which is headquartered in the UAE, and QBE European Operations, which is headquartered in London, United Kingdom. See ECF No. 57 at 9. Notably, neither insurer was directly targeted by Defendant's conspiracy; any restitution owed to the insurers is the result of the loss suffered by Unatrac. Compare ECF No. 36 ¶ 8 (noting that Unatrac suffered $10,679,166.54 in losses), with ECF No. 57 at 9 (showing how the total amount of restitution owed, $10,679,166.54, is to be divided between Unatrac and each insurer).

[2] A Notice of Publication and Finality of the Consent Order of Forfeiture by the United States was entered on August 1, 2022, certifying that all subjected property had been forfeited pursuant

2

February 23, 2021, Defendant appealed the court's Judgment. ECF No. 61 (Notice of Appeal); see Docketing Statement at 2, United States v. Okeke, No. 21-4075 (4th Cir. May 11, 2021) (noting that Defendant appealed "[w]hether there was a sufficient factual basis for the guilty plea" and "[w]hether the Sentencing Guidelines were correctly computed and applied"). On July 16, 2021, the appeal was dismissed on Defendant's voluntary motion. See ECF No. 74 (Order).

After sentencing on February 16, 2021, Defendant did not raise any restitution issue until he filed the instant Motion on September 8, 2025. ECF No. 108. In the Motion, Defendant requests the court to strike or vacate his Restitution Order because it "may exceed the statutory authority of the [c]ourt" under United States v. Elbaz, 52 F.4th 593 (4th Cir. 2022). ECF No. 108 at 3-4.[3] On September 16, 2025, the court directed the United States to respond to Defendant's Motion and to specifically "address the applicability of [Elbaz] to Defendant's case within the context of 18 U.S.C. § 3663A; state its position on the timeliness of Defendant's Motion at this juncture; and explain whether the United

---

to the Consent Order. ECF No. 80. A Declaration of Publication of the Notice was attached. ECF No. 80-1.

[3] According to court records, while incarcerated, Defendant paid $829.56 towards the total restitution owed, with the most recent payment having been processed on July 1, 2025. Defendant has a remaining balance of $10,678,336.98. Defendant's monthly payments were set to begin on February 21, 2026, sixty (60) days after completion of his sentence. See ECF No. 57 at 8.

States opposes Defendant's Motion on any other grounds." ECF No. 109 at 3-4. The United States timely filed its Response in Opposition to Defendant's Motion on October 27, 2025. ECF No. 111. Defendant filed a Reply on November 21, 2025.  ECF No. 112.[4]

Since the filing of Defendant's Reply, it has come to this court's attention, by internal report to the court from the Probation Officer, that Defendant was surrendered to United States Immigrations and Customs Enforcement following his release from custody of the Bureau of Prisons on December 23, 2025.[5] Defendant was removed from the United States on February 15, 2026, to Nigeria, his country of birth. Because Defendant's Motion was ripe for judicial review prior to his removal, and absent any authority

---

[4] Although the court received Defendant's Reply on December 16, 2025, it was deemed filed when placed in the prison mailing system on November 21, 2025, under the prison mailbox rule. Houston v. Lack, 487 U.S. 266, 276 (1988); see ECF No. 112-2 (Envelope).

[5] See Find an Inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 21, 2026) (searching for "Obinwanne Okeke" and receiving the result: "Not in BOP Custody as of: 12/23/2025"); ECF No. 57 at 4 (Judgment, Special Condition 1, providing: "As a condition of supervised release, upon completion of the term of imprisonment, the defendant is to be surrendered to a duly-authorized immigration official of the Department of Homeland Security Bureau of Immigration and Customs Enforcement for deportation review in accordance with established procedures provided by the Immigration and Naturalization Act, 8 U.S.C. Section 1101, et seq.").

4

suggesting that the Motion is mooted as a result of his removal,[6] the court will proceed to address the merits of the Motion.

## II. LEGAL STANDARDS

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A-3664, makes restitution mandatory for certain offenses, including wire fraud. See 18 U.S.C. § 3663A(c)(1)(A)(ii); Lagos v. United States, 584 U.S. 577, 579-80 (2018). If subject to the MVRA, the district court must order the defendant to pay restitution to the victims of the convicted offense "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). "[I]f agreed to by the parties in a plea agreement," the court must also order the defendant to pay

---

[6] The Fourth Circuit has recognized that a "restitution order . . . is a part of a defendant's criminal sentence." United States v. McLeod, 972 F.3d 637, 640 (4th Cir. 2020). As part of his sentence, Defendant remains obligated to pay the remaining balance of restitution owed, despite no longer being present in the United States. See supra note 3 and accompanying text. This continued obligation is further underscored by the fact that, under the Mandatory Victims Restitution Act, a restitution order may be enforced at any time by the United States "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a); see id. § 3664(m)(1)(A)(i). Accordingly, Defendant's Motion is not moot, as he continues to have a "legally cognizable interest in the outcome" of this matter. United States v. Ketter, 908 F.3d 61, 65 (4th Cir. 2018) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)).

"restitution to persons other than the victim of the offense." Id. § 3663A(a)(3).

"A sentence imposing a restitution order is a final judgment that may not be modified absent one of several enumerated statutory exceptions." United States v. Bratton-Bey, 564 F. App'x 28, 29 (4th Cir. 2014) (first citing 18 U.S.C. § 3664(o); and then citing United States v. Grant, 715 F.3d 552, 557 (4th Cir. 2013)). Specifically, the MVRA provides:

> A sentence that imposes an order of restitution is a final judgment notwithstanding the fact that—
>
> (1) such a sentence can subsequently be—
>
> > (A) corrected under Rule 35 of the Federal Rules of Criminal Procedure and section 3742 of chapter 235 of this title;
> >
> > (B) appealed and modified under section 3742;
> >
> > (C) amended under subsection (d)(5); or
> >
> > (D) adjusted under section 3664(k), 3572, or 3613A; or
>
> (2) the defendant may be resentenced under section 3565 or 3614.

18 U.S.C. § 3664(o). Outside of these exceptions, sentencing courts do not have the authority to modify a restitution order. See United States v. Roper, 462 F.3d 336, 339 (4th Cir. 2006) ("[T]he terms of the MVRA clearly dictate that a district court cannot remit a mandatorily imposed restitution order.").

### III. ANALYSIS

Defendant's only argument for why this court should strike or vacate his Restitution Order is based on the Fourth Circuit's holding in United States v. Elbaz, 52 F.4th 593 (4th Cir. 2022). ECF No. 108 at 3. In the Motion, Defendant explains that the Elbaz court "held that restitution under the [MVRA] may not be ordered for foreign victims without a qualifying domestic nexus." Id. According to Defendant, his Restitution Order is "inconsistent" with Elbaz because Unatrac "is not a domestic U.S. victim." Id. at 4. The United States opposes Defendant's Motion on two grounds: first, there is no statutory authority under which the court may reconsider the Restitution Order at this juncture; and second, Elbaz does not apply to Defendant's case because he agreed to pay restitution to Unatrac in his Plea Agreement. ECF No. 111 at 1.

The court agrees with the United States and finds Defendant's requested relief to be without legal basis. First, Defendant claims that Section 3664(o) "explicitly preserves the [c]ourt's authority to modify restitution 'as otherwise expressly provided by statute.'" ECF No. 112 at 5 (citing 18 U.S.C. § 3664(o)(1)(D)). Section 3664(o)(1)(D) authorizes adjustments to restitution orders under 18 U.S.C. §§ 3664(k), 3572, or 3613A. See 18 U.S.C. § 3664(o)(1)(D). To illustrate the details of Section 3664(o)'s exceptions, the Fourth Circuit provided the following summary:

7

> Rule 35 [of the Federal Rules of Criminal Procedure] allows correction of a sentence within 14 days of its imposition when an error "resulted from arithmetical, technical, or other clear error" or modification of a sentence for the defendant's substantial assistance to the government. 18 U.S.C. § 3742 concerns an appeal of a sentence. 18 U.S.C. § 3664(d)(5) pertains to victim losses that the district court cannot ascertain at the sentencing hearing. 18 U.S.C. § 3572 concerns adjustment of payment of fines. 18 U.S.C. §§ 3613A and 3614 concern a defendant's default on a payment of a fine or restitution. And, 18 U.S.C. § 3565 pertains to a defendant's violation of her probation. . . . 18 U.S.C. § 3664(k)[] concern[s] a material change in the defendant's ability to pay restitution . . . .

Grant, 715 F.3d at 557. Indeed, none of these exceptions apply to Defendant's case, and his claim that the exceptions under Section 3664(o)(1)(D) do apply is unpersuasive, if not misplaced.

But even if the court was authorized to reconsider Defendant's Restitution Order at this juncture, the holding in Elbaz does not apply to Defendant's case. In Elbaz, the defendant was ordered to pay restitution under the MVRA to domestic and foreign victims after a jury found her guilty of, inter alia, conspiracy to commit wire fraud. 52 F.4th at 600-01, 608. On appeal, the defendant argued that the district court erroneously considered losses to the foreign victims in the calculation of her restitution. Id. at 608. The Fourth Circuit agreed, recognizing that restitution orders under the MVRA "must be limited to 'the losses to the victim caused by the offense.'" Id. at 610 (emphasis in original) (quoting United States v. Llamas, 599 F.3d 381, 391 (4th Cir. 2010)). Because the United States Code "only criminalizes domestic wire

fraud," the wire-fraud conspiracy statute, 18 U.S.C. § 1349, cannot "justify restitution under the [MVRA] for losses stemming from a purely extraterritorial conspiracy." Id. (emphasis in original). In other words, "foreign victims with no nexus to criminal conduct in the United States" are not "victims" under the MVRA. Id. at 611.[7]

However, Defendant's case is fundamentally distinguishable from Elbaz in an important respect: Defendant agreed to pay restitution to Unatrac in his Plea Agreement and Restitution Order. The MVRA specifically provides: "The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." 18 U.S.C. § 3663A(a)(3) (emphases added). Unlike the defendant in Elbaz, who was convicted by a jury, 52 F.4th at 601, Defendant here pleaded guilty to wire-fraud conspiracy and, in the Plea Agreement, agreed to pay restitution to the "victims of the conduct described in the charging instrument, statement of facts or any related or similar conduct," which included Unatrac, ECF No. 35 at 5-6 (Plea

---

[7] Importantly, in holding that "purely foreign conduct [is] not a violation of U.S. criminal law," Elbaz, 52 F.4th at 609, the Fourth Circuit clarified that a district court may still consider losses to foreign victims in wire-fraud conspiracy cases for sentencing purposes, see id. at 610 ("[E]ven if the district court may have been barred from considering purely foreign conduct in calculating the Guideline range, the court was certainly free to consider it when setting its final sentence."); see also infra note 9 and accompanying text.

Agreement); see ECF No. 34 (Plea Agreement Hearing). At sentencing, the court accordingly ordered restitution to Unatrac, and the Restitution Order was signed as "SEEN AND AGREED" by Defendant and his trial counsel. See ECF No. 57 at 8 (Judgment, Restitution Order). As such, Defendant's Restitution Order falls squarely within the bounds of Section 3663A(a)(3), and Elbaz does not apply.

Defendant nevertheless contends that the Plea Agreement "did not explicitly authorize restitution to foreign victims lacking a domestic nexus." ECF No. 112 at 6. The court disagrees. It is well established that a plea agreement need not identify the specific victims to whom restitution is owed. See, e.g., United States v. Sarikey, No. 1:23-cr-56, 2024 WL 3625173, at *2 (E.D. Va. Aug. 1, 2024) (Brinkema, J.) (finding that the defendant owed restitution to twenty-eight (28) victims not explicitly named in the plea agreement but who were identified in the statement of facts or were victims of "related or similar" conduct); United States v. Fabian, 798 F. Supp. 2d 647, 685 n.16 (D. Md. 2011) ("[W]hen deciding whether restitution to persons or entities other than the victims of the offense of conviction was 'agreed to by the parties in a plea agreement' courts regularly look beyond the four corners of a written agreement[.]"). Here, the Plea Agreement provides restitution for "victims of the conduct described in the charging instrument [and] statement of facts," both of which detail

10

Unatrac's losses from the conspiracy. ECF No. 35 at 5-6; see ECF Nos. 16 ¶¶ 1-7 (Indictment), 36 ¶ 8 (Statement of Facts). When read alongside the pertinent filings in this case, the terms of the Plea Agreement clearly contemplated restitution to Unatrac, and Defendant's argument to the contrary is unavailing.

In sum, even if the court had the authority to modify Defendant's Restitution Order at this juncture, and even if Elbaz applied to this case, Defendant nevertheless agreed, in his Plea Agreement and Restitution Order, to pay restitution to Unatrac. As such, Unatrac, and by extension, its insurers,[8] are parties other than the victim of the offense to which the court was required to order restitution under the MVRA. See 18 U.S.C. § 3663A(a)(3). Therefore, Defendant's Restitution Order, see ECF No. 57 at 7-9, remains in full force and effect.[9]

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion, ECF No. 108, is **DENIED**. The Clerk is **DIRECTED** to send a copy of this Opinion to Defendant's last-known address in the United States; to

---

[8] See supra note 1 and accompanying text.

[9] The court notes that even if Elbaz did apply to Defendant's case in the absence of a plea agreement, this court was permitted to consider the losses of foreign victims for sentencing purposes, as the conspiracy also involved domestic wire-fraud schemes that targeted victims located in the Eastern District of Virginia and outside of Virginia. See ECF No. 36 ¶ 7; supra note 7 and accompanying text.

Defendant's trial counsel, John Obiora Iweanoge; and to the United States Attorney at Newport News. Trial counsel shall forward a copy of this Opinion to Defendant at the last address for Defendant in counsel's records, so notifying the court in writing of his action in this regard.

Defendant is **ADVISED** that he may appeal from this Opinion by forwarding a written notice of appeal to the Clerk of the United States District Court, U.S. Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within fourteen (14) days from the date of filing of this Order. See Fed.R.App.Proc. 4(b)(1).

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

May 22, 2026

12